**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAMANTHA BOWERS,** | : | **Civil No.  4:24-CV-2131** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

**<u>MEMORANDUM OPINION</u>**

## I.   <u>Introduction</u>

The plaintiff in this case, Samantha Bowers, challenges the decision of a

Social Security Administrative Law Judge (ALJ) which found that she had not met

the exacting standards for disability under the Social Security Act. In particular, on

appeal Bowers insists that the ALJ erred in evaluating the severity of her obesity and

other symptoms, including her reported need to frequently lie down and rest during

the workday.

In considering these arguments, we are enjoined to apply a deferential

standard of review, a standard of review which simply asks whether there is

"substantial evidence" supporting the Administrative Law Judge's (ALJ)

determination. With respect to this legal guidepost, as the Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, after an independent review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner.

2

II.    **Statement of Facts and of the Case**

   **A. Bowers' Medical History Regarding Fatigue and Obesity**

   On August 11, 2022, Samantha Bowers applied for supplemental security income benefits under the Social Security Act, alleging disability beginning September 30, 2019. (Tr. 17).  According to Bowers, she was totally disabled due to a series of medical conditions, including degenerative disc disease of the lumbar spine, osteoarthritis of the right hip, arthritis of the bilateral knees, Pelligrini-Stieda disease of the left knee, polyarthralgia, tremor, hidradenitis suppurativa, residual effects of a cyst on right thigh including scarring and occasional pain, irritable bowel syndrome, hypertension, residual effects of gastric bypass surgery, obesity, major depressive disorder, generalized anxiety disorder with panic attacks, post-traumatic stress disorder, attention deficit hyperactivity disorder, and a binge eating disorder. (Tr. 19). Bowers was born was born on November 22, 1985, and was 36 years old, which is defined as a younger individual by the Commissioner's regulations, at the time of this alleged onset of his disability. (Tr. 29). She had a high school education and had previously worked as a customer service representative and driver. (Tr. 28-29).

   The principal issues in this appeal relate to the ALJ's symptom evaluation in this case and particularly focus on the ALJ's treatment of Bowers' obesity and

claimed need to frequently lie down and rest during the day. With respect to these issues, the clinical evidence reveals the following:

The clinical record shows that Bowers was obese but also contains substantial evidence indicating that this condition was not disabling and was, in fact, improving. During the pertinent period, Bowers' weight fluctuated between 200 and 260 pounds, and her body mass index or BMI fell within the clinically obese range. (Tr. 41, 73, 341, 343, 345, 350, 355, 368, 497, 500, 510, 529, 542, 550, 562, 573, 588, 611, 616, 623, 655, 657, 661, 675). However, despite these consistent reports of obesity, Bowers described an active lifestyle which included pet care, laundry, other chores at home, shopping and playing video games. (Tr. 55-56). Moreover, the clinical evidence disclosed that her obesity had improved significantly. By the time of her ALJ hearing in May of 2024, Bowers stated that she weighed 205 pounds and reported that through treatment and medication she had recently lost twenty pounds. (Tr. 41). The clinical record also indicated that she had undergone a successful gastric bypass procedure in 2019 which led to a 100 pound weight loss. (Tr. 342, 349).

As for Bowers' allegations of disabling joint pain which required her to frequently recline and rest, the ALJ noted the clinical record simply revealed that:

> In October 2022, the claimant is noted to have tenderness to palpation of her lumbar midline; however, she had normal strength to her bilateral

4

lower extremities (Exhibit 5F). In November 2022, x-rays of the claimant's lumbar spine show mild degenerative changes at multiple levels (Exhibit 2F). Although the claimant was recommended physical therapy for her back, she reportedly did not attend due to not having time (Exhibits 5F, 6F). Due to continued allegations of generalized joint pain and fatigue, the claimant was referred to rheumatology for further evaluation and management of her polyarthralgia (Exhibit 5F). However, the record does not contain any treatment records from the rheumatologist (Exhibit 5F). The claimant sought medical treatment for back pain and left flank pain in September 2023; however, at that time, the claimant was noted to have normal range of motion and no obvious midline tenderness . . . .

(Tr. 25).

## B. **The Medical Opinion Evidence**

Given this fairly benign clinical history, three medical experts provided assessments of Bowers' physical residual functional capacity. Notably, none of these experts found Bowers' physical impairments to be disabling. At the outset, two non-examining state agency experts opined that Bowers retained the physical ability to perform work at a medium exertional level. (Tr. 68-86). In addition, on November 14, 2022, a consulting examining source, Dr. Ahmed Kneifati, opined that Bowers retained the ability to perform a range of light work. (Tr. 363-387).

It was against this medical background that Bowers' case came to be considered by the ALJ.

C. **The ALJ Hearing and Decision.**

A hearing was conducted in this case on May 1, 2024, at which Bowers and a vocational expert testified. (Tr. 36-67). In her testimony, Bowers stated that she was five feet, five inches tall and weighed 205 pounds. (Tr. 41). She also reported that through treatment and medication she had recently lost twenty pounds. (Id.) Bowers' testimony also disclosed some ambiguity regarding her actual work history with Bowers acknowledging some employment as late as 2021 and 2022 some two years after Bowers' reported onset of disability in 2019. (Tr. 42-43). In addition, during her testimony Bowers described her activities of daily living, indicating that she cared for a pet, did laundry and other chores at home, shopped and played video games. (Tr. 55-56). Bowers also provided an extreme account of the extent to which her impairments caused her to recline and rest, stating that she needed to recline twenty to thirty times each day for ten to thirty minutes on each occasion.[1]

Following this hearing, on May 20, 2024, the ALJ issued a decision in Bowers' case. (Tr. 14-30). In that decision, the ALJ first concluded that Bowers had not engaged in substantial gainful activity since August 11, 2022, her application date. (Tr. 19). At Step 2 of the sequential analysis that governs Social Security cases,

[1] Bowers' testimony thus indicated that on a daily basis she reclined between two hours and twenty minutes (200 minutes, or 20 breaks of 10 minutes each), and fifteen hours. (900 minutes, or 30 breaks of 30 minutes each).

the ALJ found that Bowers had the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis of the right hip, arthritis of the bilateral knees, Pelligrini-Stieda disease of the left knee, polyarthralgia, tremor, hidradenitis suppurativa, residual effects of a cyst on right thigh including scarring and occasional pain, irritable bowel syndrome, hypertension, residual effects of gastric bypass surgery, obesity, major depressive disorder, generalized anxiety disorder with panic attacks, post-traumatic stress disorder, attention deficit hyperactivity disorder, and a binge eating disorder. (Id.)

At Step 3, the ALJ determined that Bowers did not have an impairment or combination of impairments that met or medically equaled the severity of one of the disability listing impairments. (Tr. 20-23). Between Steps 3 and 4, the ALJ then fashioned a highly restrictive residual functional capacity ("RFC") for the plaintiff which considered all of her impairments as reflected in the medical record, and found that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; frequently handle, finger, and feel with the bilateral upper extremities; frequently use the bilateral lower extremities for the operation of foot controls; she can have occasional exposure to extreme heat, extreme cold, wetness, and humidity; occasional exposure to hazards such as heights and moving machinery; she is able to perform simple, routine, repetitive

tasks; she requires low stress work defined as occasional simple decision-making and occasional changes in the work setting; she can have occasional interaction with co-workers, supervisors, and the public.

(Tr. 23).

Notably, the RFC fashioned by the ALJ reveals that the ALJ credited the severity of Bowers' reported symptoms, at least in part, since the ALJ structured an RFC for Bowers which was significantly more limiting that the state agency expert opinions, which both concluded that she could perform work at a medium exertional level. (Tr. 27-28). However, the ALJ ultimately found that neither Bowers' obesity, nor her symptoms including her reported need to recline for hours each day, were fully credible or disabling.

In reaching this conclusion the ALJ thoroughly discussed Bowers' obesity and need to recline. For example, with respect to her obesity, the ALJ's decision acknowledged that this impairment was severe at Step 2 of this analysis. (Tr. 19). The ALJ then examined this impairment at Step 3, but found that: "The current evidence, however, fails to establish an impairment that is accompanied by evidence reflective of listing-level severity." (Tr. 20).

The ALJ went on to carefully assess and evaluate Bowers' obesity in the course of fashioning the RFC in this case. On this score, the ALJ explained that:

> The claimant's obesity was considered pursuant to Social Security Ruling 19-2p. The claimant testified that she is 5 feet 5 inches tall and weighs 205 pounds, which is consistent with the medical records documenting her weight to be between 218 and 245 pounds (Exhibits 5F, 6F, 8F, 9F, 12F). Accordingly, her body mass index (BMI) exceeds 36, categorizing her as obese (Exhibits 5F, 6F, 8F, 9F, 12F). The claimant has a longitudinal history of bariatric surgery, and she testified that she lost 150 pounds (Exhibit 8F). The claimant's excess weight could reasonably be expected to increase the severity of the claimant's complaints of back, hip, and knee pain which is supported by objective studies showing mild osteoarthritis of the right hip, mild degenerative changes at multiple levels of the lumbar spine, and Pellegrini-stieda disease of the left knee (Exhibits 1F, 2F, 5F). Her excess weight could also reasonably be expected to impair her mobility and ability to stand and walk. Any limitations the claimant may have because of her obesity are more than fully accommodated by the residual functional capacity as adopted herein.

(Tr. 26).

The ALJ provided a similarly detailed discussion and analysis of Bowers' other symptoms, including her reported need to rest throughout the workday. On this score the ALJ found that Bowers' "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the statements of the claimant . . . concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record". (Tr. 25). At the outset, the ALJ observed that this extreme level of impairment was inconsistent with Bowers' self-reported activities of daily living, stating:

> The claimant testified that she is able to take her dog out, make herself something to eat, and perform household chores such as laundry which is consistent with the third-party report of Joshua Busterna (Exhibits 4E, 7E, 11E, 14E). She reported being able to go grocery shopping, vacuum her car, mop floors, wash clothes, do light cleaning, and wipe down counters; and she testified that she gets along with others (Exhibits 7E, 11E, 14E). However, she reported difficulty putting on socks and shoes, tying shoes, standing in the shower, raising her arms to care for her hair, and shaving her legs (Exhibits 7E, 11E, 14E). On the contrary, the claimant reported that hot showers are somewhat helpful for her, and she does this daily (Exhibit 10E).

(Tr. 24-25).

The ALJ also noted that Bowers' claims regarding the extent to which she needed to recline each day strained credulity, finding that: "She also stated that she rests and lays down 20-30 times per day for between 10 to 30 minutes at a time which means she is resting between 3 (20*10 minutes/60 minutes) to 15 (30*30 minutes/60 minutes) hours per day which is a disproportionate amount of time compared to the claimant's objective findings." (Tr. 24).

Further, the ALJ determined that Bowers' treatment history did not support the extreme level of impairment which she described. Instead,

> In October 2022, the claimant is noted to have tenderness to palpation of her lumbar midline; however, she had normal strength to her bilateral lower extremities (Exhibit 5F). In November 2022, x-rays of the claimant's lumbar spine show mild degenerative changes at multiple levels (Exhibit 2F). Although the claimant was recommended physical therapy for her back, she reportedly did not attend due to not having time (Exhibits 5F, 6F). Due to continued allegations of generalized joint pain and fatigue, the claimant was referred to rheumatology for further

evaluation and management of her polyarthralgia (Exhibit 5F). However, the record does not contain any treatment records from the rheumatologist (Exhibit 5F). The claimant sought medical treatment for back pain and left flank pain in September 2023; however, at that time, the claimant was noted to have normal range of motion and no obvious midline tenderness, but she had some diffuse lumbar paraspinal discomfort with palpation with the left being worse and appearing very tight compared to the right (Exhibits 6F, 8F).

(Tr. 25).

Having made these findings, the ALJ concluded that Bowers could not perform her past relevant work but that there were other jobs that existed in significant numbers in the national economy that she could perform. (Tr. 28-30). Accordingly, the ALJ concluded that Bower had not met the stringent standard of disability set by law and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Bower attacks the ALJ's symptom evaluation in this case and particularly focusses on the ALJ's treatment of Bowers' obesity and her claimed need to frequently lie down and rest during the day. These issues are fully briefed by the parties and are, therefore, ripe for resolution.

Upon consideration, we find that substantial evidence supported the ALJ's findings that these impairments were not fully disabling. Accordingly, we will affirm the decision of the Commissioner.

11

III.    **Discussion**

A. **Substantial Evidence Review – the Role of this Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

12

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote

a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F.

Supp. 913, 914 (W.D.Pa. 1981) ("The Secretary's determination as to the status of a

claim requires the correct application of the law to the facts."); see also Wright v.

Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review

of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of

review. First, when conducting this review, "we are mindful that we must not

substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d

607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined

to refrain from trying to re-weigh the evidence. Rather, our task is to simply

determine whether substantial evidence supported the ALJ's findings. However, we

must also ascertain whether the ALJ's decision meets the burden of articulation

demanded by the courts to enable informed judicial review. Simply put, "this Court

requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc.

Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted

on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable

meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the

15

insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

16

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

17

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at

*5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate

which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

## C. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

The interplay between the deferential substantive standard of review that governs Social Security appeals, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is illustrated by those cases which consider analysis of a claimant's reported symptoms. When evaluating lay testimony regarding a claimant's reported symptoms we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. See Diaz v. Comm'r, 577 F.3d 500, 506 (3d Cir.2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses...."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir.1994) (citing Stewart v. Sec'y of Health, Education and Welfare, 714 F.2d 287, 290 (3d Cir.1983)); see also Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir.2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. Ray v. Astrue, 649 F.Supp.2d 391, 402 (E.D.Pa.2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)).

Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc. Sec., 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

McKean v. Colvin, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015)(footnotes omitted). Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with respect to the ALJ's well-articulated findings but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the

individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled."). It is well-settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. §404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–

3p. This includes but is not limited to medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D.Pa. Oct. 24, 2014); Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019

23

WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub nom. Koppenhaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

### D. Legal Benchmarks for Assessing a Claimant's Obesity

Finally, the interplay between this deferential substantive standard of review, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is aptly illustrated by those cases which consider analysis of the compounding effect of obesity upon disability claimants. In this regard, the leading case addressing this issue is Diaz v. Comm'r of Soc. Sec., 577 F.3d 500 (3d Cir. 2009). In Diaz, the ALJ found at Step 2 of the analytical process that Diaz's obesity was a severe impairment but then neglected to address the exacerbating effect of this condition at Step 3 or in any other subsequent steps in the disability analysis.

On these facts, the Court of Appeals remanded the case for further consideration by the Commissioner and provided guidance regarding the duty of articulation required from ALJs in this setting. Thus, the Court of Appeals explained that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at

24

step three and at every subsequent step." <u>Diaz</u>, 577 F.3d at 504. While imposing this responsibility of articulation upon ALJs, the appellate court did not endeavor to impose some strict formulaic requirements upon these administrative adjudicators. Quite the contrary, the Court made it clear that "[t]he ALJ, of course, need not employ particular 'magic' words: '[Case law] does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.' " <u>Diaz,</u> 577 F.3d at 504 (citations omitted).

The Court of Appeals also made it abundantly clear that its decision related to the ALJ's duty to adequately articulate the rationale underlying any decision denying benefits and did not in any way alter the very deferential substantive standard of review in these cases. As the Court noted,

> Were there *any* discussion of the combined effect of [obesity upon] Diaz's impairments, we might agree with the District Court [and affirm the ALJ decision]. However, absent analysis of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function.

<u>Diaz,</u> 577 F.3d at 504 (emphasis in original). By noting that "*any* discussion of the combined effect of [obesity upon] Diaz's impairments" would have been sufficient, the appellate court underscored the continuing vitality of the deferential standard of review that applies in these cases.

25

Thus, fairly construed, <u>Diaz</u> holds that where an ALJ has defined a claimant's obesity as a severe impairment at Step 2 of this analysis, there is a basic duty of articulation that is owed the claimant, explaining how that obesity affects the issue of disability. However, once that duty of articulation is met, the substantive standard of review remains highly deferential. Applying this analytical paradigm, following <u>Diaz</u> it has been held that a single cursory assurance that an ALJ has considered a claimant's obesity may be insufficient to satisfy the requirement that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." <u>Diaz,</u> 577 F.3d at 504; <u>see also</u> <u>Sutherland v. Berryhill</u>, No. 3:17-CV-00124, 2018 WL 2187795, at *9 (M.D. Pa. Mar. 6, 2018), <u>report and recommendation adopted sub nom. Sutherland v. Berryhill</u>, No. CV 3:17-0124, 2018 WL 2183359 (M.D. Pa. May 11, 2018). However, a statement by an ALJ in a decision denying benefits that the ALJ has "considered any additional and cumulative effects of obesity," when coupled with even a brief factual analysis of the medical evidence as it relates to obesity and impairment is sufficient to satisfy this duty of articulation. <u>Cooper v. Comm'r of Soc. Sec.</u>, 563 F. App'x 904, 911 (3d Cir. 2014). Further, when an ALJ considers the role of a claimant's obesity, evaluating it within the context of the overall record, consistent with the appropriate

guidelines, this duty is satisfied. <u>Woodson v. Comm'r Soc. Sec.</u>, 661 F. App'x 762, 765 (3d Cir. 2016). Finally, this responsibility is met when the ALJ explicitly considers the claimant's obesity when assessing that claimant's residual functional capacity. <u>Hoyman v. Colvin</u>, 606 F. App'x 678, 680 (3d Cir. 2015). <u>Medina v. Berryhill</u>, No. 3:17-CV-1941, 2018 WL 3433290, at *6–7 (M.D. Pa. June 8, 2018), <u>report and recommendation adopted,</u> No. CV 3:17-1941, 2018 WL 3426408 (M.D. Pa. July 16, 2018).

### E. **The Commissioner's Decision Will Be Affirmed**.

In the instant case, Bowers invites us to set aside an ALJ's findings concerning the severity of her obesity and her claimed need to recline throughout the workday. In considering Bowers' arguments, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson</u>, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce</u>, 487 U.S. at 565. Judged against these deferential standards of review, we find that substantial evidence supported the ALJ 's evaluation of Bowers' obesity and her symptoms,

including her reported need to recline for hours each day. Therefore, we will affirm this decision.

Turning first to the ALJ's consideration of Bowers' obesity, in this case the ALJ's decision complied with the Third Circuit's mandate in Diaz that once obesity is identified as a severe impairment "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." Diaz, 577 F.3d at 504.

Fairly construed, the ALJ's decision in this case contains the type of meaningful consideration called for by Diaz. Thus, the ALJ assessed Bowers' obesity at Step 3, finding that: "The current evidence, however, fails to establish an impairment that is accompanied by evidence reflective of listing-level severity." (Tr. 20). The ALJ then thoroughly considered Bowers' obesity in the course of fashioning the RFC in this case, explaining that:

> The claimant's obesity was considered pursuant to Social Security Ruling 19-2p. The claimant testified that she is 5 feet 5 inches tall and weighs 205 pounds, which is consistent with the medical records documenting her weight to be between 218 and 245 pounds (Exhibits 5F, 6F, 8F, 9F, 12F). Accordingly, her body mass index (BMI) exceeds 36, categorizing her as obese (Exhibits 5F, 6F, 8F, 9F, 12F). The claimant has a longitudinal history of bariatric surgery, and she testified that she lost 150 pounds (Exhibit 8F). The claimant's excess weight could reasonably be expected to increase the severity of the claimant's complaints of back, hip, and knee pain which is supported by objective

> studies showing mild osteoarthritis of the right hip, mild degenerative changes at multiple levels of the lumbar spine, and Pellegrini-stieda disease of the left knee (Exhibits 1F, 2F, 5F). Her excess weight could also reasonably be expected to impair her mobility and ability to stand and walk. Any limitations the claimant may have because of her obesity are more than fully accommodated by the residual functional capacity as adopted herein.

(Tr. 26).

This comprehensive analysis satisfies the ALJ's duty of articulation in this setting, and substantial evidence supported the ALJ's finding that Bowers' obesity was not wholly disabling. There was no error here.

Likewise, the ALJ's rejection of Bowers' claim that she needed to recline for two to fifteen hours each day was well supported by the evidence. At the outset, no medical expert opined that Bowers suffered from the extreme degree of disabling fatigue. Moreover, the clinical record simply did not identify any impairments which would account for this extraordinary level of fatigue. Instead, these treatment records showed that:

> In October 2022, the claimant is noted to have tenderness to palpation of her lumbar midline; however, she had normal strength to her bilateral lower extremities (Exhibit 5F). In November 2022, x-rays of the claimant's lumbar spine show mild degenerative changes at multiple levels (Exhibit 2F). Although the claimant was recommended physical therapy for her back, she reportedly did not attend due to not having time (Exhibits 5F, 6F). Due to continued allegations of generalized joint pain and fatigue, the claimant was referred to rheumatology for further evaluation and management of her polyarthralgia (Exhibit 5F). However, the record does not contain any treatment records from the

rheumatologist (Exhibit 5F). The claimant sought medical treatment for back pain and left flank pain in September 2023; however, at that time, the claimant was noted to have normal range of motion and no obvious midline tenderness . . . .

(Tr. 25).

Likewise, Bowers' self-reported activities of daily living were inconsistent with her described, and extreme, level of fatigue.  As the ALJ observed:

The claimant testified that she is able to take her dog out, make herself something to eat, and perform household chores such as laundry which is consistent with the third-party report of Joshua Busterna (Exhibits 4E, 7E, 11E, 14E). She reported being able to go grocery shopping, vacuum her car, mop floors, wash clothes, do light cleaning, and wipe down counters; and she testified that she gets along with others (Exhibits 7E, 11E, 14E). However, she reported difficulty putting on socks and shoes, tying shoes, standing in the shower, raising her arms to care for her hair, and shaving her legs (Exhibits 7E, 11E, 14E). On the contrary, the claimant reported that hot showers are somewhat helpful for her, and she does this daily (Exhibit 10E).

(Tr. 24-25).

Finally, we agree that ALJ correctly concluded that Bowers' subjective reports regarding the extent to which she needed to recline were not credible since that testimony "means she is resting between 3 (20*10 minutes/60 minutes) to 15 (30*30 minutes/60 minutes) hours per day which is a disproportionate amount of time compared to the claimant's objective findings." (Tr. 24).

While Bowers' primary contentions relate to the ALJ's evaluation of her obesity and need to recline, the plaintiff makes several other arguments which

30

warrant brief consideration. First, Bowers asserts that the assessment of her emotional impairments was incomplete and led to an erroneous mental RFC.

We disagree. With respect to Bowers' ability to meet the emotional demands of the workplace the ALJ found that she:

> is able to perform simple, routine, repetitive tasks; she requires low stress work defined as occasional simple decision-making and occasional changes in the work setting; she can have occasional interaction with co-workers, supervisors, and the public.

(Tr. 23).

Ample evidence supported this finding which was congruent with every medical opinion of record in this case. (Tr. 26-27). Moreover, the clinical history in this case did not suggest any greater degree of impairment. Quite the contrary, it appeared that her emotional condition was generally stable on medication. As the ALJ noted:

> The claimant's mental status examinations during the relevant period have been within normal limits aside from an occasional anxious or depressed mood and being easily distracted (Exhibits 4F, 5F, 6F, 7F, 8F, 9F, 12F). While the claimant is recommended to attend therapy, the claimant's record contains no evidence of any mental health therapy, and the claimant testified that she is not receiving therapy (Exhibits 4F, 5F, 7F, 9F). Additionally, the claimant's record notes interval worsening of mood and anxiety attributable to medication nonadherence, as it improved with resumption, which is consistent with the medical records documenting the claimant's anxiety and depression were noted to be in remission on medication (Exhibits 4F, 5F, 7F). It should be noted though that in March 2024, the claimant's mental health records show that the claimant had last been seen in October

2023 with a recommendation to follow-up in one month; however, the claimant did not do so and had not filled her psychotropic medications since October 2023 (Exhibits 9F, 12F). Despite the same, the claimant's depression is noted to overall good in March 2024 (Exhibit 12F). The claimant has a longitudinal history of binge eating disorder which is reported to be improving, which is consistent with the claimant's testimony that it is better when taking medication (Exhibits 4F, 5F, 9F, 12F).

(Tr. 26).

Simply put, in the absence of clinical or medical opinion evidence suggesting some higher level of emotional impairment this argument fails.

Finally, Bowers insists that the ALJ's finding that she often displayed a normal range of motion failed to account for reports of thoracic spinal tenderness. (Doc. 14 at 18). This argument also fails. Fairly read, the ALJ's decision acknowledged Bowers' complaints of spinal tenderness, but also found that the clinical evidence appeared to document only mild degenerative changes. (Tr. 25). Moreover, the RFC fashioned in this case fully accounted for these limitations when it provided that: "she can never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl." (Tr. 23). Under the deferential standard of review which governs Social Security appeals there was no error here.

At bottom, it appears that the plaintiff is requesting that this court re-weigh the evidence. This we may not do. See Chandler, 667 F.3d at 359 (citing Richardson

v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations"); see also Gonzalez v. Astrue, 537 F.Supp.2d 644, 657 (D. Del. 2008) ("In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of the record") (internal citations omitted)). Rather, our task is simply to determine whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Finding that this deferential standard of review is met here, we conclude that a remand is not appropriate for the purpose of further assessing this opinion evidence.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this

33

court acting *de novo* might have reached a different conclusion.'" <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case and will affirm that decision.

## IV.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying this claim will be AFFIRMED.

An appropriate order follows.

<u>*s/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: February 26, 2026